We accordingly affirm the conviction and sentence appealed from.

Affirmed.

244 So.2d 826

**X–L FINANCE COMPANY, Incorporated,**

**v.**

**Eugene M. & Louise P. BONVILLION, and Mildred P. & Joseph T. Cadiere.**

**No. 50574.**

Feb. 24, 1971.

Sidney I. Goldman, Richard M. Goldman, New Orleans, for plaintiff-respondent.

Jude Fanguy, Daniel C. Wiemann, New Orleans, for defendants-appellants.

Phelps, Dunbar, Marks, Claverie & Sims, James H. Roussel, Harry S. Redmon, Jr., New Orleans, for amicus curiae.

TATE, Justice.

The issue before this court is whether Bonvillion, the judgment debtor, is a "seaman" and thus exempt from garnishment by virtue of a federal statute applying to any seaman. 46 U.S.C. § 601. Bonvillion is a member of a crew of a barge used in offshore drilling operations.

Both the trial and intermediate courts dismissed Bonvillion's rule to set aside the garnishment issued against his employer ("McDermott") by his judgment creditor, X–L Finance Company. 232 So.2d 922 (La.App. 4th Cir. 1970). These courts held, I., that Bonvillion was not a "seaman" within the meaning of the exemption statute and, II., that, even if so, the exemption from garnishment did not apply to him, since he was in the "coastwise" trade (these courts relying upon 46 U.S.C. § 544, as construed by them).

We granted certiorari to review these two holdings. 256 La. 351, 236 So.2d 494 (1970).

I.

Bonvillion relies on 46 U.S.C. Section 601, in claiming exemption from garnishment. This Congressional enactment ("Section 601") pertinently provides that "No wages due or accruing to any master, *seaman*, or apprentice shall be subject to attachment or arrestment from any court * * *."

The initial issue concerns whether Bonvillion is a "seaman", so as to be exempted from garnishment by this statute.

Bonvillion is a permanent crewman of a derrick barge used in offshore drilling operations. Although having no motive power of its own, this floating barge is used in navigable waters; it is thus a "vessel" for maritime law purposes. Also, Bonvillion

—permanently employed and performing all his duties on this vessel, which duties contributed to its function—is a "seaman".

See: Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); Offshore Co. v. Robison, 266 F.2d 769, 75 A.L.R.2d 1296 (1959); Annotation, 75 A.L.R.2d 1312 (1961); Norris, The Law of Seamen, Secs. 10 and 11 (3d Ed. 1970).

The judgment creditor points out, however, that decisions such as those cited held offshore workers on floatable barges to be "seamen" for purposes of the Jones Act (46 U.S.C. § 688). (This statute provides a remedy for "Any *seaman* who shall suffer personal injury in the course of his employment.") The creditor insists that Section 601's exemption for garnishment applies only to "traditional" seamen, not to Jones Act seamen.

There is no statutory nor (as we shall show) jurisprudential authority for this distinction. A statutory definition of "sea-

man" is contained at 46 U.S.C. Section 713. This enactment defines "seaman" as including "every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board * * * any vessel belonging to any citizen of the United States * * *."

This provision (Section 713) is a re-enactment of Section 65 of the Act of June 7, 1872, ch. 322 (17 Stat. 277; Rev.Stat., Sec. 4612 (1974)). It furnishes a guide to the meaning of the other provisions likewise derived from the 1872 Act, cf. Warner v. Goltra, 293 U.S. 155, 160–161, 55 S. Ct. 46, 79 L.Ed. 254 (1934); such as the provision exempting the wages of a "seaman" from garnishment [1] Blackton v. Gordon, 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 683 (1938). The definition of seaman in this section "is directed to extension not to restriction." Uravic v. F. Jarka Co., 282 U. S. 234, 239, 51 S.Ct. 111, 112, 75 L.Ed. 312 (1931).

The judgment creditor cites no decision (and we could find none) interpreting the statutes in question otherwise, nor which differentiate application of the garnish-

---

[1] Section 61 of the 1872 Act provides: "That no wages due or accruing to any seaman or apprentice shall be subject to *attachment or arrestment from any court* * * *." This became Section 4536 of the Revised Statutes (1874). This statute was expressly repealed by Section 12 of the Act of March 4, 1915, ch. 153 (38 Stat. 1169). The 1915 Act provides the original text of 46 U.S.C. § 601, the garnishment-exemption statute here construed. (This was amended in 1959 and in 1968 in respects immaterial to the present decision.) See text of Section 601 in opening paragraph of I, above.

ment-exemption (Section 601) on any distinction between a "traditional" seaman and a Jones Act seaman. Rather, the creditor relies upon general statements that, for Jones Act purposes, "seaman" has been defined more broadly and liberally than for other purposes. See, e. g., Norris, The Law of Seamen, Section 9 (3d ed., 1970).

The decisions relied upon as holding to this effect, however, did not involve any classification of a non-seaman (in the sense of a non-maritime worker) as a maritime "seaman" for the limited purposes of the Jones Act. Instead, they involved a determination that a recognized type of maritime worker is a "seaman" within the generic and all-inclusive sense of the term entitled to the broad Jones Act remedy, whether or not the injured maritime worker was technically classified as a "seaman" (as distinguished from some other type of maritime worker) for purposes of other statutes affecting maritime workers.

The issues concerned, for instance, whether a "master" was also a "seaman" (Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254, 1934), or whether a "longshoreman" was (International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S. Ct. 19, 71 L.Ed. 157, 1926) [2], or whether a

longshoreman injured in 1926 on a *German* vessel could be a "seaman" for Jones Act purposes, i. e., in view of Section 713's definition of seamen as those working on American-owned vessels (Uravic v. F. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312, 1931). See Carumbo v. Cape Cod S. S. Co., 123 F.2d 991 (C.A. 1, 1941). summarizing these and other decisions.

The holdings and rationale of these decisions are thus inapposite and irrelevant to the question now before this court. Modern federal decisions which interpret these federal statutes hold that offshore workers (such as the present) permanently employed on vessels are seamen. Norris, The Law of Seamen, Section 11 at pp. 31–32 (1970); Marine Drilling Co. v. Autin, 363 F.2d 579 (C.A. 5, 1966). We find no warrant nor reason to exclude this type of seamen from the protection from garnishment accorded by Section 601 (46 U.S.C. § 601) to *all* seamen.

## II.

Alternatively, the judgment creditor contends that Section 601's garnishment-exemption does not apply to seamen "engaged in the coastwise trade." For present purposes, we shall assume that

2. This decision recognizing a Jones Act remedy for longshoremen was prior to the 1927 enactment providing for them exclusively a compensation-type remedy. 33 U.S.C. § 901.

Bonvillion is so engaged; although such assumption is not free from doubt.

The creditor's argument relies upon 46 U.S.C. § 544, which provides: "None of the provisions of sections [then follows about fifty specified sections of Title 46; *not* including Section 601, the garnishment-exemption statute here in question] of this title shall apply to sail or steam vessels engaged in the coastwise trade. * * *."

Despite the failure of Section 544 to remove coastwise mariners from Section 601's protection against garnishment, the judgment creditor nevertheless argues that an 1874 statute to this effect still applies. Essentially, in making this hypertechnical argument, the creditor relies upon the interpretation by an overruled 1932 decision of the Alabama Supreme Court.

This argument is based upon the statutory history of Sections 544 and 601 of Title 46.

3. Act June 7, 1872, ch. 322, section 61; 17 Stat. 262, 276; Rev.Stat., Sec. 4612 (1974).

4. Act June 9, 1874, ch. 260; 18 Stat. 64. This provision was later codified as 46 U.S.C. Section. 544. When so codified, it specified the provisions in title 46 which had been derived from the original 1872 Act and thus, by virtue of the 1874 Act, inapplicable to coastwise mariners. To reiterate, the codification expressly *omits* the garnishment-exemption statute

The grandfather provision of Section 601, exempting seaman's wages from garnishment, was first enacted as part of the Shipping Commissioner's Act of 1872.[3] However, in 1874 by statute Congress provided that none of the provisions of this Act should apply to vessels engaged in the coastwise trade (with exceptions not here pertinent).[4] This last enactment is the source of Section 544.

Without material change in language, the 1872 antigarnishment provision became Section 4536 of the Revised Statutes of the United States, an 1874 codification of prior statutes. This codification expressly did not affect nor repeal statutes enacted after 1873; therefore, the 1874 exclusion of coastwise sailors from garnishment-exemption remained in effect. Inter-Island Steam Navigation Co., Ltd. v. Byrne, 239 U.S. 459, 36 S.Ct. 132, 60 L.Ed. 382 (1915).[5]

(Section 601) as among those code provisions which do *not* apply to the coastwise trade.

5. The erroneous 1932 Alabama decision, to be referred to below, relied in part upon this *Inter-Island* decision. *Inter-Island*, however, expressly, in its last paragraph, pointed out that its decision of the question was prior to a 1915 statute, to be noted in the text, which re-enacted the exemption from garnishment as applicable to all seamen, coastwise or not.

However, in 1915 Congress enacted the Seaman's Act, enlarging the protections accorded maritime workers.[6] Section 12 of this Act (38 Stat. 1169) re-enacted the provision that the wages of all seamen are exempt from garnishment. The re-enactment further broadened the exemption so as to apply to fishermen as well as seamen. It further expressly repealed Section 4536, the earlier garnishment-exemption provision, which had been derived from the 1872 Act.

The effect of this 1915 statutory re-enactment in broader form was to repeal the 1872 Act's more limited antigarnishment provision. It was the 1872 garnishment-exemption, not any 1915 re-enactment, which had been modified by the 1874 exclusion of coastwise sailors from its protection. The effect of the 1915 statute was thus to restore garnishment-exemption to all seamen, coastwise or not.

So, virtually all courts considering the question have held. Blackton v. Gordon, 303 U.S. 91, 93, 58 S.Ct. 417, 82 L.Ed. 683 (1938); Inter-Island Steam Navigation Co., Ltd. v. Byrne, 239 U.S. 459, 463, 36 S.Ct. 132, 60 L.Ed. 382 (1915) (dicta); Burns v. Fred L. Davis Co., 271 F. 439 (C.A. 1, 1921); Waterman S. S. Corp. v. Brill, 243 Ala. 25, 9 So.2d 23 (1942); Manufacturer's Trust Co. v. Anderson, 241 App.Div. 843, 271 N.Y.S. 333 (1934); Norris, The Law of Seamen, Section 314 (3d ed., 1970).

Essentially, the only decision to the contrary is Duggar v. Mobile and Gulf Nav. Co., 224 Ala. 359, 140 So. 614 (1932). The court there held that, by the re-enactment of Section 544 (the coastwise exclusion of 1874) as part of the United States Code, the Congress had reinstated the 1874 exclusion of coastwise mariners from garnishment-exemption. The error in this reasoning, of course, is that Section 544 by its express terms does *not* list Section 601 (garnishment-exemption) as among those provisions *not* affecting coastwise seamen.[7]

This Alabama decision was followed by a New Jersey decision, Gordon v. Blackton, 117 N.J.L. 40, 186 A. 689 (1936). However, the Supreme Court granted certiorari and, although affirming on other ground, indicated that the 1915 re-enactment had restored the 1872 garnishment-

6. Act March 4th, 1915, ch. 153; 38 Stat. 1164.

7. The intermediate court opinion affirmed had further overlooked the 1915 repeal of

the 1872 provision which the 1874 coastwise-exclusion modified. 25 Ala.App. 2, 140 So. 611 (1931).

exemption to its original terms (i. e., free of the 1874 modification excluding coastwise mariners). Blackton v. Gordon, 303 U.S. 91, 92–93, 58 S.Ct. 417, 82 L.Ed. 683 (1938).

The judgment creditor also argues that the 1915 Act should not be given the construction reached by us, since to do so amounts to holding that the 1915 Act repealed by implication the 1874 coastwise exclusion, and since repeals by implication are not favored. The error in this analysis is that neither we nor any other court so construing the statute hold that the 1915 Act repealed the 1874 coastwise provision. The 1915 Act simply re-enacted a garnishment-exemption provision, expressly broader than the former 1872 exemption expressly repealed.

*Decree:*

For the foregoing reasons, we reverse the judgments of the previous courts; we grant the defendant Bonvillion's motion, and we order the plaintiff's garnishment against Bonvillion's employer, McDermott, to be vacated and dismissed. All costs of these proceedings are taxed against the X-L Finance Co., Inc., the plaintiff (judgment creditor) and respondent herein.

Garnishment proceedings dismissed.